# Exhibit 1

## IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### Civil Actions Branch

| | |
|---|---|
| Q FUND NE DC I, LLC <br> 502 Calvin Lane <br> Rockville, Maryland 20851 | ) <br> ) <br> ) <br> ) |
|     **Plaintiff,** | ) <br> ) |
| **v.** | )    **Civil Action No.**    2025-CAB-005712 <br> ) |
| DISTRICT OF COLUMBIA <br> DEPARTMENT OF BUILDINGS <br> 1100 4th Street, SW, <br> Washington, D.C. 20024 | ) <br> ) <br> ) <br> ) <br> ) |
| **SERVE:** | ) <br> ) |
|     Hon. Brian Schwalb <br>     Attorney General for the <br>      District of Columbia <br>     400 6th Street, NW <br>     Washington, DC 20001 | ) <br> ) <br> ) <br> ) <br> ) <br> ) |
|     Esther McGraw, Esq. <br>     General Counsel <br>     District of Columbia <br>      Department of Buildings <br>     1100 4th Street, SW, <br>     Washington, D.C. 20024 | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |
|     **Defendant.** | ) |

## COMPLAINT

**(Inverse Condemnation, Regulatory Taking,**
**Deprivation of Rights under Color of Authority – 42 U.S.C. § 1983)**

Plaintiff Q Fund NE DC I, LLC ("Plaintiff" or "Q Fund"), by and through their attorneys,

hereby complains of Defendant District of Columbia Department of Buildings ("Defendant" or

"DOB"), as follows:

**Nature of the Action**

1.    This action arises from Defendant's refusal to (a) issue Notices of Condemnation for nine residential apartments (walkup) properties of which Plaintiff is the 100% equitable owner and (b) require tenants to vacate the properties at issue, so that Plaintiff can perform substantial repairs and renovations in satisfaction of over 150 Notices of Infraction (collectively, the "NOIs") that DOB issued for these properties.

2.    Plaintiff cannot perform the necessary extensive corrective action on the properties in satisfaction of the NOIs without removal of the tenants from each property and temporary relocation.

3.    Plaintiff is barred from pursuit of an eviction action against the tenants of the properties due to the refusal of the District of Columbia's Department of Licensing and Consumer Protection ("DLCP") to issue Plaintiff a Basic Business License ("BBL") as the Landlord and equitable owner of the properties at issue.  Specifically, DLCP refuses to issue Plaintiff a BBL based on the very NOIs issued by DOB for which Plaintiff desires to take the necessary corrective action but cannot absent removal and temporary relocation of the properties' tenants.

4.    Furthermore, the District of Columbia's Recorder of Deeds also refuses to record any deeds reflecting Q's Fund's legal ownership of the properties at issue, based liens on placed by the District of Columbia on the properties at issue resulting from on the very NOIs for which Q Fund desires to take the necessary corrective action, but cannot absent temporary relocation of the properties' tenants

5.    Plaintiffs have incurred and will continue to incur significant damages as a direct and proximate result of DOB's action and inaction, *inter alia*, depriving Plaintiff of all economically viable use of the Property by virtue of Plaintiff's inability to commence the

necessary substantial remodeling and renovation efforts necessary to correct the over 150 deficiencies detailed in the NOIs.

6.      The District of Columbia has not initiated formal condemnation proceedings against the properties at issue, effectively rendering them without economic value to Plaintiff.

7.      The repairs required by the NOIs would serve a valid public purpose, including but not limited to safe, affordable housing for the residents of the District of Columbia.[1]

8.      Plaintiff has attempted to resolve the matter with DOB, who refuses to act in response to Plaintiff's numerous requests.

9.      DOB is not just delaying action that would allow for the improvement of the Properties, it is affirmatively refusing to move forward with it at all.

10.      As the Court in *Potomac Dev. Corp. v. District of Columbia*, 28 A. 3d 531, 541 (2011) aptly stated:

> "Government action of an arbitrary or abusive character may also give rise to a de facto taking claim. *See Acorn Land, LLC v. Baltimore County, 402 Fed. Appx. 809* (4th Cir. Sep. 21, 2010) (per curiam) (regulatory taking occurred where a court found that a local government's refusal to take action to permit development was arbitrary, and the government then effectively sidestepped the court's order by rezoning the property); *Amen v. City of Dearborn*, 718 F.2d 789, 797 (6th Cir. 1983) (de facto taking occurred when the city 'chose not to invoke its condemnation powers, but, rather, elected to engage in a deliberate course of conduct to force the sale of private property at reduced value' as part of redevelopment plan)."

11.      Neither DOB nor any other agency of the District of Columbia Government has provided Plaintiff with adequate procedures to challenge the excessive burdens imposed on

---

[1] In fact, Plaintiff is bound to an Affordable Housing Covenant entered between the District of Columbia and the former owners of the Properties, because of a settlement in the litigation styled *District of Columbia v. Solid Brick Ventures, LLC, et al.*, No. 2022 CA 000446 B, for a period of 25 years as of December 8, 2022.

Plaintiff resulting from DOB's affirmative action and inaction and failure to provide Plaintiff with the requested relief (condemnation of the properties and assistance with temporary removal/relocation of the affected tenants).

### The Parties

12.    Plaintiff Q Fund is a Limited Liability Company organized under the laws of the State of Maryland, registered to conduct business in the District of Columbia, and holder of a 100% equitable ownership interested in the properties that are the subject of this Complaint.

13.    Defendant DOB is a governmental agency of the District Columbia against whom Plaintiff seeks the relief requested in Plaintiff this Complaint.

### Jurisdiction and Venue

14.    This Court has subject matter jurisdiction over this action pursuant to D.C. Code § 11-921, as it concerns real property located in the District of Columbia.

15.    This Court has personal jurisdiction over Defendant pursuant to D.C. Code § 13-423(a)(3), as the matter involves tortious injury to Plaintiff caused by Defendant, a governmental agency of the District Columbia, in the District of Columbia.

16.    This Court is the proper venue within which to bring this action pursuant to D.C. Code § 11-921, as the subject matter of the Complaint involves real property in the District of Columbia, and the cause of action arose in the District of Columbia.

### Facts Common to All Counts

**A.    The Properties**

17.    This action involved the following properties (collectively, the "Properties") of which Plaintiff currently holds a 100% equitable ownership interest:

      a.    Lot Numbered Two (2), in Square Numbered Thirty-Six Hundred Seventy-Four (3674) in a subdivision made by Howard Homes, Inc., as per plat

recorded in Liber 115 at Folio 26 in the Office of the Surveyor for the District of Columbia.

For informational purposes only:
65 Hawaii Avenue, NE
Lot 2, Square 3674

b.    Lot Numbered Three (3), in Square Numbered Thirty-Six Hundred Seventy-Four (3674) in a subdivision made by Howard Homes, Inc., as per plat recorded in Liber 115 at Folio 26 in the Office of the Surveyor for the District of Columbia.

For informational purposes only:
69 Hawaii Avenue, NE
Lot 3, Square 3674.

c.    Lot Numbered Four (4), in Square Numbered Thirty-Six Hundred Seventy-Four (3674) in a subdivision made by Howard Homes, Inc., as per plat recorded in Libor 115 at Folio 26 in the Office of the Surveyor for the District of Columbia.

For informational purposes only:
73 Hawaii Avenue, NE
Lot 4, Square 3674

d.    Lot Numbered Five (5), in Square Numbered Thirty-Six Hundred Seventy-Four (3674) in a subdivision made by Howard Homes, Inc., as per plat recorded in Liber 115 at Folio 26 in the Office of the Surveyor for the District of Columbia.

For informational purposes only:
77 Hawaii Avenue, NE
Lot 5, Square 3674

e.    Lot Numbered Six (6), in Square Numbered Thirty-Six Hundred Seventy-Four (3674) in a subdivision made by Howard Homes, Inc., as per plat recorded in Libor 115 at Folio 26 in the Office of the Surveyor for the District of Columbia.

For informational purposes only:
81 Hawaii Avenue, NE
Lot 6, Square 3674

f.    Lot Numbered Seven (7), in Square Numbered Thirty-Six Hundred Seventy-Four (3674) in a subdivision made by Howard Homes, Inc., as per

plat recorded in Liber 115 at Folio 26 in the Office of the Surveyor for the District of Columbia.

For informational purposes only:

85 Hawaii Avenue, NE
Lot 7, Square 3674

g.     Lot Numbered Ten (10), in Square Numbered Thirty Six Hundmd Seventy-Four (3674) in a subdivision made by Howard Homes, Inc., as per plat recorded in Liber 115 at Folio 26 in the Office of the Surveyor for the District of Columbia.

For informational purposes only:
97 Hawaii Avenue, NE
Lot 10, Square 3674

h.     Lot Numbered Nineteen (19), in Square Numbered Thirty-Six Hundred Seventy-Four (3674) in the subdivision made by Howard Homes, Inc., as per plat recorded in Liber 116 at Folio 26 in the Office of the Surveyor for the District of Columbia.

For informational purposes only:
66 Webster Street, NE
Lot 19, Square 3674

i.     Lot Numbered Eleven (11) in Square Numbered Thirty-Six Hundred Seventy-Four (3674) in a subdivision made by Howard Homes, Inc., as per plat recorded in Liber 115 at Folio 26 in the Office of the Surveyor for the District of Columbia.

For informational purposes only:
98 Webster Street NE
Lot 11, Square 3674

**B.     Plaintiff's Acquisition of Equitable Title to the Properties**

18.     By deeds recorded on October 29, 2020, the Webster Hawaii Limited Liability Company conveyed to former property owner Solid Brick Ventures, LLC, ("Solid Brick Ventures") all right, title and interest to the properties at issue in this lawsuit identified by the following addresses.

a.     65 Hawaii Avenue, NE (Instrument No. 2020131812);

6

b.      69 Hawaii Avenue, NE (2020131813);

c.      73 Hawaii Avenue, NE (2020131814);

d.      77 Hawaii Avenue, NE (2020131815);

e.      81 Hawaii Avenue, NE (2020131816);

f.      85 Hawaii Avenue, NE (2020131817);

g.      97 Hawaii Avenue, NE (2020131819); and

h.      66 Webster Street, NE (2020131819);

19.     By deed recorded on August 25, 2020 (Instrument No. 2020102691), 529 59th Street NE, LLC conveyed to former property owner 98 Webster Ventures, LLC ("98 Webster Ventures," and collectively with Solid Brick Ventures, the "Former Property Owners") all right, title and interest to the property at the address of 98 Webster Street, NE.

20.     By Deed of Trust recorded on April 25, 2022 (Instrument No. 2022045164, the "Deed of Trust"), the Former Property Owners as Borrowers (collectively, "Borrowers") obtained a purchase money mortgage from Mainstreet Bank ("Mainstreet Bank" or "Lender") for the Properties in the amount of $10,154,000.00 (Ten Million One Hundred Fifty Four Thousand and No Dollars, the "Mortgage"), and pledging the Properties as security for the Mortgage.

21.     By Loan Sale Agreement dated September 18 and 19, 2024, Lender sold and assigned all right, title and interest in the Deed of Trust to Plaintiff (the "Assignment and Sale").

22.     Lender and Plaintiff formally recorded the Assignment and Sale to Plaintiff in the Land Records of the District of Columbia on October 2, 2024 at 12:08:18 p.m. (Instrument No. 2024093352).

23.     Article VIII of the Deed of Trust defines specific events (the "Event(s) of Default") under which Borrowers shall be deemed to be in default under the Deed of Trust.  Specifically,

Section 8.1 states that such an Event of Default occurs "If the [Borrower] shall default in the payment of any Indebtedness when and as the same shall become due and payable, whether at maturity or by acceleration or as part of any prepayment or otherwise."

24.    Article IX of the Deed of Trust defines Lender's remedies upon an event of Default, including but not limited to a Foreclosure Sale under Section 9.0(c):

> Upon an Event of Default, the Trustee personally, or by its agents and attorneys, may sell the Mortgaged Property, or any part or parts thereof, and all estate, right, title, interest, claims and demand therein, at public auction at such time and place and upon such terms and conditions as the Trustee may deem appropriate or as may be required or permitted by applicable law or rule of Court . . . .

25.    Borrower committed an Event of Default by failing to make payment when due under the Mortgage.

26.    Accordingly, by Foreclosure Notice recorded on November 11, 2024 in the Land Records of the District of Columbia (Instrument No. 2024105141), published and served on Borrowers in the manner required under the Deed of Trust and required by District of Columbia law, Plaintiff, as holder of the Mortgage, noticed a Foreclosure Sale by Auction of the Properties on December 9, 2024 (the "Foreclosure Sale").

27.    Plaintiff was the successful bidder at the Foreclosure sale and purchased the Properties at the Foreclosure Sale for $2,067,803.00 (the "Purchase Price").

**C.    <u>Outstanding NOIs issued by Defendant and Initial Plan for Corrective Action</u>**

28.    On January 13, 2025, Plaintiff's Principal, Kennth Brown ("Mr. Brown"), received a letter (the "January 13 Letter") from the District of Columbia's Attorney General's Office

("OAG") identifying no less than 158 outstanding code violations and NOIs issued with respect to the Properties that the former owners failed to address.[2]

29.    The January 13 letter requested that Plaintiff contact Mr. Christopher Pena from the Attorney General's Office no later than January 17, 2025 "to discuss a plan to abate the violations . . . ".  Exhibit 1 at 4.

30.    Plaintiff timely contacted Mr. Pena as requested to begin development of a plain to commence with the substantial renovation and remodeling effort necessary to fully remediate the NOIs and cure the code violations.

31.    Subsequently, on March 13, 2025 (the "March 13 Meeting"), Mr. Brown met with DOB Enforcement Inspectors Jason Williamson ("Mr. Williamson") and Keith Parsons ("Mr. Parsons") to formalize the corrective action plan.[3]

32.    At the March 13 Meeting, Plaintiff proposed to begin with an inspection of the 66 Webster Street, NE property.  Exhibit 3 at 5.

33.    The parties acknowledged that the substantial construction efforts required as part of the necessary corrective action would require the temporary relocation of some tenants. Accordingly, Plaintiff inquired as to programs offered by the District of Columbia Government available to assist with the temporary relocation of tenants required based on the extensive nature of the required construction/renovation. *Id.*

---

[2] A true and correct copy of the January 13 Letter is attached hereto as **Exhibit 1**, with Exhibit A to that letter identifying the specific NOI at issue attached hereto as **Exhibit 2**.

[3] A true and correct copy of the email correspondence memorializing this meet is attached hereto as **Exhibit 3**.

34.     As proposed, Plaintiff diligently requested the inspection through the DOB portal that very same day.  DOB scheduled the inspection for March 20, 2025 (the "March 20 Inspection").  *Id.* at 7.

35.     The parties likewise agreed to a follow up meeting on March 24, 2025 to, *inter alia*, discuss the results of the March 20 Inspection and agree on further remediation efforts. *Id.* at 5.

36.     Additionally, at the March 13 Meeting, the DOB Investigators agreed to provide Mr. Brown information for contacts at the District of Columbia's Department of Licensing and Consumer Protection ("DLCP") to obtain the Basic Business License ("BBL") required to transact business in the District of Columbia.  *Id.* at 5.

   **D.     Defendant's Refusal to Conduct the March 20 Inspection and Subsequent Failure to Communicate with Plaintiff**

37.     On the day of the March 20 Inspection, Mr. Brown received a call from DOB Inspector Mr. Gregory Butler informing Mr. Brown that he refused to conduct the inspection, would "reach out" to Mr. Williamson and Mr. Parsons, and that "someone" from DOB would follow up with Mr. Brown.  Exhibit 3 at 3.

38.     On April 3, 2025, having received no follow up from DOB, Mr. Brown followed by email to Mr. Williamson and Mr. Parsons requesting both an explanation for DOB's abrupt cancellation of the March 20 Inspection and failure to follow up as represented by Mr. Butler to Mr. Brwon on March 20.  *Id.* at 2 -3.

39.     On May 20, 2025, a full two months after the cancelled March 20 Inspection, and having received no response from DOB, Mr. Brown sent a follow-up email to Mr. Williamson and Mr. Parsons.  *Id.* at 1.

40.     By email on June 2, 2025 (the "June 2 Email,")[4] Mr. Parsons finally responded by email to Mr. Brown:

> As I recall we sent an inspector out to one of your properties to see if it met the qualifications to be closed as uninhabitable, but it didn't. There is likely not a magic bullet here--sometimes existing tenants must simply be accommodated under existing leases and landlord-tenant law . . . .

Exhibit 4 at 3.

41.     Mr. Brown responded by email to Mr. Williamson and Mr. Parsons less than 30 minutes later, emphasizing to them the severity of the situation.  He reiterated the need to have the tenants removed from the Properties due to the extensive nature of the necessary repairs, the tenants' refusal to vacate the properties, Plaintiffs inability to take legal action due to DOB's refusal to issue Plaintiffs a BBL and over $123,000 in liens (the "Liens") on the Properties, inhibiting Plaintiff's ability to have Deeds of Conveyance recorded, all due to the very infractions Plaintiff desires to remediate but cannot due to DOB's intentional inaction.  *Id. at 1.*

42.     In other cases, Plaintiff's staff has reached out to DOB for clarification of certain NOIs and has never received any response.  *Id.*

43.     Nonetheless, Plaintiff has commenced remediation action where reasonably possible under the circumstances.[5]

44.     By letter dated June 11, 2025, Plaintiff filed its Tort Claim (the "Tort Claim") with the District of Columbia;s Office of Risk Management ("DCORM").[6]

45.     By letter dated June 23, 2025,[7] acknowledged receipt of the Tort Claim.

---

[4] A true and correct copy of which is attached hereto as **Exhibit 4**.

[5] A spreadsheet identifying Plaintiff progress on remediation of the NOIs is attached hereto as **Exhibit 5**. This exhibit identifies at least 69 NOIs where Plaintiff has requested clarification or additional information and has not received a response.

[6] A true and correct copy of which is attached hereto as **Exhibit 6**.

[7] A true and correct copy of which is attached hereto as **Exhibit 7**.

46.     As of the filing date of the instant Complaint, DCORM has not provided a response to Plaintiff's Tort Claim.

**E.    DOB's Inaction Amounts to an Unauthorized Taking**

47.     DLCP refuses to issue Plaintiff a BBL until it has completed the required repairs and has fully remediated the NOIs at issue.

48.     Plaintiff requires the tenants to vacate the Properties due to the substantial nature of the renovations involved.

49.     DOB has refused, and continues to refuse to issue a Notice of Condemnation or Declaration rendering the Properties uninhabitable pending completion of the required corrective measures.  Exhibit 4 at 3.

50.     Accordingly, OAG will only allow Plaintiffs to vacate those tenants who voluntarily agree, and all tenants have refused.

51.     Plaintiff's prior legal counsel has confirmed that District of Columbia Courts will not entertain any eviction request from a landlord without an active BBL.

52.     Due to the outstanding NOIs that Plaintiff cannot remediate under the current circumstances and the resulting Liens on the Properties, the District of Columbia Recorder of Deeds refuses to record the Deeds of Conveyance recognizing Plaintiff's legal ownership of the Properties.

53.     Because of the unsafe conditions, a substantial number of tenants have ceased rent payments.

54.     While the District has performed inspections in the past, the scope of the citations issued are incompatible with the Defendant's refusal to act further and condemn any of the Properties and render the Properties uninhabitable.

12

55.     This is particularly true of the properties at 66 Webster Street and 97 Hawaii Avenue.  Both units have plumbing and electrical problems that the District is requiring Plaintiff to address, but the scope of the issues cannot be fixed with the units occupied without harm to the tenants.

56.     DOB is not just delaying action that would allow for the improvement of the Properties, it is affirmatively refusing to move forward with it at all.

57.     As the Court in *Potomac Dev. Corp. v. District of Columbia*, 28 A. 3d 531, 541 (2011) aptly stated:

> "Government action of an arbitrary or abusive character may also give rise to a de facto taking claim. *See Acorn Land, LLC v. Baltimore County, 402 Fed. Appx. 809* (4th Cir. Sep. 21, 2010) (per curiam) (regulatory taking occurred where a court found that a local government's refusal to take action to permit development was arbitrary, and the government then effectively sidestepped the court's order by rezoning the property); *Amen v. City of Dearborn*, 718 F.2d 789, 797 (6th Cir. 1983) (de facto taking occurred when the city 'chose not to invoke its condemnation powers, but, rather, elected to engage in a deliberate course of conduct to force the sale of private property at reduced value' as part of redevelopment plan)."

58.     Accordingly, if the Defendant is unwilling to inspect, condemn, and help relocate the tenants at the Properties, it is engaged in an unjustifiable taking that arbitrarily destroys the value of not only Plaintiff's investment, but the Properties themselves, and the interests of the citizens who live there.

## Count I
**(Inverse Condemnation)**

59.     Plaintiffs incorporate by reference all allegations contained in paragraphs 1 through 58 of the Complaint.

60.     Plaintiff is the equitable owner of real property in the District of Columbia.

61.    Specifically, Plaintiff is the equitable owner of the Properties identified in Paragraph 16, *supra*.

62.    Defendant issued 158 NOIs (collectively, the "NOIs") on the Properties subject to this litigation.

63.    Defendant issued the January 13 Letter requiring Plaintiff to immediately commence the necessary corrective action in response to the NOIs.

64.    Plaintiff quickly responded by arranging the March 13 Meeting and the scheduling March 20 Inspection.

65.    Defendant then, without prior notice, unilaterally cancelled the March 20 Inspection and has intentionally refused to schedule any further inspections.  *See* Exhibit 3.

66.    Defendant has not communicated with Plaintiff related to any further proposed remediation efforts to the Properties since March 20, 2025.  *Id.*

67.    The scope and nature of the repairs requires temporary relocation of the Properties' tenants.

68.    Defendant has further failed to condemn the Property and render it uninhabitable so that Plaintiff can vacate the tenants and commence with the necessary corrective action.

69.    Accordingly, OAG has taken the position that Plaintiff may vacate only those tenants who chose to relocate voluntarily.

70.    No tenant has chosen to relocate voluntarily, and most have ceased rent payments.

71.    Due to the lack of a BBL, Plaintiff has no legal or equitable recourse through the Courts requiring tenants to vacate so that it can commence the necessary substantial repairs to the Properties.

72.    Furthermore, due the Liens on the Properties, the District of Columbia Recorder of Deeds refuses record the conveyance of legal ownership of the Properties to Plaintiff.

73.    DOB is not just delaying action that would allow for the improvement of the Properties, it is affirmatively refusing to move forward with it at all.

74.    As the Court in *Potomac Dev. Corp. v. District of Columbia*, 28 A. 3d 531, 541 (2011) aptly stated:

> "Government action of an arbitrary or abusive character may also give rise to a de facto taking claim. *See Acorn Land, LLC v. Baltimore County, 402 Fed. Appx. 809* (4th Cir. Sep. 21, 2010) (per curiam) (regulatory taking occurred where a court found that a local government's refusal to take action to permit development was arbitrary, and the government then effectively sidestepped the court's order by rezoning the property); *Amen v. City of Dearborn*, 718 F.2d 789, 797 (6th Cir. 1983) (de facto taking occurred when the city 'chose not to invoke its condemnation powers, but, rather, elected to engage in a deliberate course of conduct to force the sale of private property at reduced value' as part of redevelopment plan)."

75.    The regulatory burden imposed by the NOIs, coupled with Defendant's intentional inaction in response to Plaintiff's inspection requests and failure to condemn the Properties/render the Properties uninhabitable so that Plaintiff can commence the necessary corrective action, constitutes nothing less than a *de facto* taking of the Properties for public use.

76.    Defendant's actions and inactions, as described above, deprives Plaintiff of any economically beneficial use the Properties.

77.    Plaintiff has incurred damages exceeding $75,000, including but not limited to the Liens, rent not paid, potential lost future rent and the increase in that Properties' value that would accrue but for Defendant's inaction.

78.     The substance and nature of the taking without due process, and consequential damages to Plaintiff, require relief and just compensation under the Fifth Amendment of the U.S. Constitution.

79.     Despite effectively taking Plaintiff's property through its regulatory actions and intentional inaction, the Defendant has not offered any relief or provided any compensation to Plaintiff.

80.     The regulatory burden imposed by the NOIs, coupled with Defendant's adamant refusal to condemn the Properties/render them uninhabitable so that Plaintiff can commence with the necessary renovations, goes beyond mere regulation and constitutes a taking for which just relief and compensation is required under the Fifth Amendment.

WHEREFORE, Plaintiffs demand: (1) A declaration that the District of Columbia's actions and inaction constitute a taking of Plaintiff's property requiring just compensation under the Fifth Amendment of the United States Constitution; (2) An order requiring the District of Columbia to formally condemn Plaintiff's property through eminent domain proceedings and take possession of the property for the purpose of removing the tenants from the Properties so that Plaintiff can take the corrective action in response to the NOIs; (3) Compensation for the unlawful taking of the Properties in an amount in excess of $75,000.00; (4) All costs and fees incurred by Plaintiffs in relation to this matter, including attorneys' fees; and (5) such other relief as this Court may deem just and proper..

## Count II
### (Regulatory Taking)

81.     Plaintiffs incorporate by reference all allegations contained in paragraphs 1 through 80 of the Complaint.

82.     Plaintiff is the equitable owner of real property in the District of Columbia.

16

83.    Specifically, Plaintiff is the equitable owner of the Properties identified in Paragraph 16, *supra*.

84.    The regulatory burden imposed by the NOIs, coupled with Defendant's intentional inaction in response to Plaintiff's inspection requests and failure to condemn the Properties/render the Properties uninhabitable so that Plaintiff can commence the necessary corrective action, have taken and substantially interferes with Plaintiff's use and enjoyment of the Properties.

85.    The regulatory requirements further effectively prevent Plaintiff from making any economically viable use of the Property.

86.    The regulatory burden imposed by the NOIs, coupled with Defendant's intentional inaction in response to Plaintiff's inspection requests and failure to condemn the Properties/render the Properties uninhabitable so that Plaintiff can commence the necessary corrective action, have taken and prevent Plaintiff from making any reasonable use of the Properties.

87.    Furthermore, Defendant's actions and inaction force Plaintiff to bear public burdens which should be borne by the public at large, including but not limited to the publicly funded programs established to assist with temporary tenant relocation in similar circumstances.

88.    The repairs to the Properties required by the NOIs serve a valid public purpose, including but not limited to the provisions of modern, safe and affordable housing for District of Columbia citizens.

89.    The District of Columbia is attempting to force Plaintiff to bear the entire cost of these repairs that benefit the public, rather than distributing the appropriate costs among the public.

90.    The District of Columbia has not offered or provided any compensation to Plaintiff for the regulatory taking of the Property.

WHEREFORE, Plaintiff demands: (1) A declaration that the District of Columbia's actions and inaction constitute a taking of Plaintiff's property requiring just compensation under the Fifth Amendment of the United States Constitution; (2) An order requiring the District of Columbia to formally condemn Plaintiff's property through eminent domain proceedings and take possession of the property for the purpose of removing the tenants from the Properties so that Plaintiff can take the corrective action in response to the NOIs; (3) Compensation for the unlawful taking of the Properties in an amount in excess of $75,000.00; (4) All costs and fees incurred by Plaintiffs in relation to this matter, including attorneys' fees; and (5) such other relief as this Court may deem just and proper.

### <u>Count III</u>
### (Deprivation of Rights under Color of Authority – 42 U.S.C. § 1983)

91.     Plaintiffs incorporate by reference all allegations contained in paragraphs 1 through 90 of the Complaint.

92.     On December 9, 2024, Plaintiffs purchased the Properties at the Foreclosure Sale for the Purchase Price.

93.     By virtue of, *inter alia*, its purchase of the Properties for the Purchase Price and corresponding equitable ownership of the Properties, Plaintiff has a property interest protected under the Fifth and Fourteenth Amendments to the Unites States Constitution.

94.     Defendant has issued no less than 158 outstanding code violations and NOIs on the Properties to the Former Owners, that the Former Owners failed to address.

95.     By the January 13 Letter, Defendant has demanded that Plaintiff take immediate corrective action in response to the NOIs.

96.     A substantial number of the identified remedial measures require significant construction/renovation, and therefore temporary relocation of the tenants.

18

97.    OAG will only permit Plaintiff to relocate those tenants who agree to vacate voluntarily. Plaintiff has identified adequate facilities for relocation of tenants to another apartment complex, but still requires tenant and OAG cooperation to do so.

98.    All Tenants have refused to vacate the Properties, and most have cease paying rent due to the unsafe conditions.

99.    In response to Plaintiff's numerous requests, Defendant refuses to issue Notices of Condemnation or declare the Properties uninhabitable for the purpose of permitting Plaintiff to have the required repairs performed without jeopardizing tenant safety.

100.    By virtue of the unresolved NOIs, DLCP refuses to issue Plaintiff a Basic Business License that would permit Plaintiff to pursue an appropriate remedy through the Court system to have the tenants relocated legally.

101.    As a result, Plaintiff cannot require the tenants to vacate the Properties to take the significant remedial measures required to satisfy the NOIs.

102.    The NOIs have resulted in the Liens on the Properties of no less than $123,000.00.

103.    As a result of the Liens, the District of Columbia Recorder of Deeds refuses to record the Deeds of Conveyance recognizing Plaintiff's legal ownership of the Properties.

104.    The regulatory burden imposed by the NOIs, coupled with Defendant's intentional inaction in response to Plaintiff's inspection requests and failure to condemn the Properties/render the Properties uninhabitable so that Plaintiff can commence the necessary corrective action, have deprived Plaintiff of its rights to use and enjoy the Properties.

105.    The regulatory requirements further effectively prevent Plaintiff from making any economically viable use of the Property.

106.    The regulatory burden imposed by the NOIs, coupled with Defendant's intentional inaction in response to Plaintiff's inspection requests and failure to condemn the Properties/render the Properties uninhabitable so that Plaintiff can commence the necessary corrective action, deprive Plaintiff from making any reasonable use of the Properties.

107.    Defendant's deprivation of Plaintiff's Constitutionally protected property interests occurred without adequate procedural protection.

108.    Defendant has not provided Plaintiff with adequate procedures to challenge the deprivation of its Constitutionally protected property interests or seek relief from the excessive burdens Defendant's actions and inaction have imposed on Plaintiff.

WHEREFORE, Plaintiff demands: (1) A declaration that the District of Columbia's actions and inaction constitute a taking of Plaintiff's property requiring just compensation under the Fifth Amendment of the United States Constitution; (2) An order requiring the District of Columbia to formally condemn Plaintiff's property through eminent domain proceedings and take possession of the property for the purpose of removing the tenants from the Properties so that Plaintiff can take the corrective action in response to the NOIs; (3) Compensation for the unlawful taking of the Properties in an amount in excess of $75,000.00; (4) All costs and fees incurred by Plaintiffs in relation to this matter, including attorneys' fees; and (5) such other relief as this Court may deem just and proper.

## Demand for Jury Trial

Plaintiffs demand a jury trial on all claims so triable.

Respectfully submitted,

**SHULMAN ROGERS, P.A.**

By:    /s/ Ryan T. Kennedy
        Ryan T. Kennedy
        DC Bar No. 90011925
        8200 Greensboro Drive, Suite 701
        McLean, Virginia 22102
        Telephone: 703-719-3417
        Fax: 301-230-2891
        rkennedy@shulmanrogers.com

Dated: August 26, 2025